UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| ROMANO CAMPOLI, | : |
| | : |
| Plaintiff, | : NO. 3:04CV1004 (MRK) |
| | : |
| v. | : |
| | : |
| CHUBB GROUP OF INSURANCE | : |
| COMPANIES, et al., | : |
| | : |
| Defendants. | : |

# MEMORANDUM OF DECISION

In this action, Plaintiff Romano Campoli challenges the denial of his claim for disability benefits under a $1,000,000 disability insurance policy. Originally, the Defendants in this action included the Chubb Group of Insurance Companies ("Chubb"), Federal Insurance Company ("Federal"), The Sklover Group, Inc. ("Sklover") and HealthExtras, Inc. ("HEI"). However, early on, the Court granted a motion to compel arbitration of Plaintiff's claims against Federal and Chubb and stayed the action as to those Defendants. Furthermore, having been informed that Plaintiff has settled his claims against those Defendants, the Court recently dismissed the claims against Chubb and Federal. Amended Order [doc. # 141].[1] The Court also granted the parties' request for a voluntary dismissal of all claims against Sklover. Order [doc. # 109].

Therefore, HEI is now the only remaining Defendant in this case. Mr. Campoli's First Amended Complaint [doc. # 93] asserts two claims against HEI. First, Mr. Campoli alleges that HEI made representations in letters and advertisements that it would pay him $1,000,000 if he became

---

[1] Federal is a member insurer of the Chubb Group of Insurance Companies, which, according to Federal, is merely the name given to the collection of insurance companies of which Federal is a member. In this Memorandum of Decision, Federal and Chubb are collectively referred to as "Federal."

disabled but that these representations were false because Federal denied Mr. Campoli's disability claim and he did not receive $1,000,000 despite his claimed disability.  First Amended Complaint ¶ XI (Misrepresentation).  Second, Mr. Campoli claims that HEI is liable to him under the disability insurance policy because HEI was "involved in a joint venture for profit with Federal" and that HEI is "liable for the acts of Federal . . . who failed to honor the policy even though Plaintiff is disabled within the meaning of the policy." *Id.* ¶ XII (Liability Under Policy, Joint Venture).  Mr. Campoli asserts that he has "suffered worry and anxiety as a result of . . . callous breaches of contract by Chubb and Federal, the joint venturers with HEI. . . . "*Id.* ¶ XIII.

Discovery having concluded, HEI has now moved for summary judgment.  Motion for Summary Judgment by HealthExtras [doc. # 113].  In his response, Mr. Campoli conceded that he could not prove a misrepresentation claim against HEI and that judgment should enter for HEI on his misrepresentation claim. Plaintiff's Response in Opposition to Defendant HealthExtras, Inc.'s Motion for Summary Judgment  [doc. # 120] ¶ I ("Plaintiff's Response") ("Plaintiff concedes summary judgment should be entered on the misrepresentation theory.").  Accordingly, the Court entered summary judgment for HEI on Mr. Campoli's misrepresentation claim orally at argument on HEI's motion. Order [doc. # 140]. The Court now GRANTS Defendant HEI's Motion for Summary Judgment [doc. # 113] on the remaining claim against it.

I.

The facts relevant to the pending motion are not in dispute. *See* Local Rule 56(a)(1) Statement of Undisputed Facts [doc. # 116]; Plaintiff's Opposition to Statement of Undisputed Facts and Statement of Facts Which are Disputed [doc. # 119]. HEI markets health and disability programs through financial institutions and other organizations, utilizing statement inserts, direct mail,

telemarketing and the internet. HEI bundles together a group of benefits to be offered to financial institution account holders and then contracts with benefit providers, including insurance companies, brokers and financial institutions to provide these benefit programs to account holders. Some of the benefits offered by HEI are underwritten and others are not. Account holders wishing to obtain the benefits offered enroll as a member of HEI's benefit program and pay program membership fees to HEI.

The program that is the focus of this litigation had an effective date of November 1, 1999 (the "Benefit Program") and consisted of underwritten and non-underwritten benefits, including the $1,000,000 disability insurance policy at issue in this case (the "Disability Policy"), as well as a $2,500 emergency accident and sickness policy and a 24-hour nurse-on-call service. *See* Designation of Exhibits to Defendant HealthExtras, Inc.'s Memorandum of Law in Support of Motion for Summary Judgment [doc. # 118] ("HEI's Exhibits"), Ex. 4. In connection with the marketing of the Benefit Program, HEI entered into a contract with Federal and Sklover (the "Marketing Agreement"). *See id.*, Ex. 1, 2. As a part of the Marketing Agreement, Federal agreed to underwrite the benefits provided by the Disability Policy, Sklover agreed to broker the policy and to provide certain administrative services, and HEI agreed to market the Benefit Program and also to provide certain administrative services. Among other provisions, the Marketing Agreement stated that "[n]either [HEI] nor Sklover shall have binding authority with respect to the Authorized Insurances, nor shall they have authority to handle any claims arising under the Policies that FEDERAL issues for the Program." *Id.*, Ex. 2, Art. 3.1. The Marketing Agreement, which the parties agree is to be construed and enforced in accordance with the law of the State of New Jersey, also provides as follows:

> The relationship between the parties shall, at all times, remain that of independent

> contractors. No party is responsible for the debts or liabilities of any other party. Except as expressly permitted herein, no party shall have any authority to bind or represent the other. Nothing herein shall be deemed to create any form of partnership or joint venture relationship or insurance agent relationship between any of the parties or their respective Affiliates.

*Id.*, Ex. 2, Art. 13.1

Mr. Campoli received an advertisement for the Benefit Program in his credit card statement and enrolled in the Benefit Program, effective March 1, 2001. Mr. Campoli received a Program Summary, listing "the following benefits subject to terms and conditions described in the Program Plan Description and in the Master Policies where applicable noted below":

> $1,000,000 Catastrophic Injury and Disability Benefit, underwritten by Federal Insurance Company, a member of the Chubb Group of Insurance Companies, under the Voluntary Accident Insurance Plan Policy 6475 22 07
>
> $2500 Emergency Accident and Sickness Medical Benefit, underwritten by Virginia Surety Company, Inc. under the Travel Protection Policy HTP00137
>
> 24-Hour Nurse-on-Call is a service provided by HealthExtras.

*Id.*, Ex. 4. Mr. Campoli also received the Plan Description for the Disability Policy, including the Certificate of Insurance Declarations and the Certificate of Insurance Contract. The Plan Description states that the company offering the disability benefits is Federal and that Federal "will pay the applicable Benefit Amount if an Accident results in a Loss not otherwise excluded." *Id.*, Ex. 5 at 4, 7.

Approximately eight months after enrolling in the HEI Benefit Program, Mr. Campoli was injured. He asserts that he became faint, fell and struck his head and, as a result, has been left with significant neurological disability, including virtually no use of his left upper extremity and only minimal movement in his left leg, memory loss and other cognitive deficits, slurred speech,

depression and difficulty swallowing. He needs assistance with bathing, meal preparation and numerous other activities of daily living. Mrs. Campoli called the HEI customer service telephone number, obtained a claim form from HEI and timely submitted to Federal a claim on their Disability Policy. However, Federal denied coverage in January 2003, asserting that Mr. Campoli's fall was not the result of an "Accident," as defined in the policy, but rather as the result of a intracerebral hemorrhage in the basal ganglia. *Id.*, Ex. 6. This litigation followed.[2]

Mr. Campoli was arbitrating his coverage dispute with Federal in accordance with the insurance policy when the parties arrived at a settlement of Mr. Campoli's insurance claim. *See* Ruling and Order Granting Motion to Compel Arbitration [doc. # 81]; Rule 41(b) Notice [doc. # 133]. According to Mr. Campoli, his settlement with Federal expressly contemplates and permits his pursuit of this action against HEI. *See* Plaintiff's Response to HealthExtras, Inc.'s Supplemental Reply to Plaintiff's Response to Its Motion for Summary Judgment [doc. # 138] at 5.

## II.

The only count remaining in the First Amended Complaint is a claim asserting that HEI is vicariously liable for Federal's breach of the Disability Policy because HEI "was involved in a joint venture for profit with Federal." First Amended Complaint ¶ XII. HEI is entitled to summary judgment on this claim because no juror could reasonably conclude on the basis of the undisputed facts that HEI and Federal were joint venturers.

As Mr. Campoli's counsel all but conceded at oral argument, there are a number of fundamental problems with Mr. Campoli's joint venture claim. To begin with, in his response to

---

[2] This case was originally filed in the United States District Court for the Northern District of Mississippi but was transferred to this Court in June 2004. *See* [doc. # 34].

5

HEI's statement of undisputed facts, Mr. Campoli admitted that the "business arrangement [between Federal, HEI and Sklover] *involved HEI, Sklover and Federal as independent contractors and not as parties to any joint venture relationship*." Opposition to Statement of Undisputed Facts [doc. #119] ¶ 14. As Mr. Campoli's counsel acknowledged at argument, this statement constitutes a judicial admission that HEI and Federal were *not* joint venturers and thus dooms Mr. Campoli's claim. *See, e.g.*, *Pacheco v. Serendensky*, 393 F.3d 348, 354 (2d. Cir. 2004) ("A party's assertion of fact in a pleading is a judicial admission by which [the party] normally is bound throughout the course of the proceeding.") (internal quotation marks omitted). Nevertheless, Mr. Campoli's counsel asserted at oral argument that the Court should ignore this admission because it was "inadvertent" on counsel's part and HEI would not be prejudiced by allowing Mr. Campoli to withdraw the admission at this time. As HEI rightly noted at argument, at no time prior to the actual day of oral argument had Mr. Campoli's counsel ever sought to withdraw the admission, even though counsel surely was aware of the admission, since it was featured as the first argument in HEI's reply brief, which was filed on October 4, 2005, two and one-half months *before* oral argument on December 20, 2005. *See* Defendant HealthExtras, Inc.'s Reply to Plaintiff's Opposition to its Motion for Summary Judgment [doc. # 124], at 2 ("This Court should enter judgment in HEI's favor, as Campoli *admits* in his counterstatement of undisputed facts that HEI, [Federal and Sklover] were not parties 'to any joint venture relationship' ") (emphasis in original). Mr. Campoli's counsel did not assert any good cause for failing to take steps to withdraw the admission before argument. Nevertheless, to avoid visiting the sins of counsel on his innocent client, and in recognition of the fact that HEI is not seriously prejudiced by allowing withdrawal of the admission at this late date, the Court will exercise its discretion to allow Mr. Campoli to withdraw his admission.

In any event, counsel's admission was perhaps no more than a Freudian slip, since the undisputed facts show conclusively what the admission concedes – that the business arrangement among Federal, Sklover and HEI was one of independent contractors and not joint venturers. While the existence of a joint venture may raise disputed issues of fact, that is not the case here.

There is no dispute that New Jersey law governs this issue.[3] As the Second Circuit has explained:

> [u]nder New Jersey law . . . the elements of a joint venture are essentially the same as of a partnership. These elements include agreement, sharing profits and losses, ownership and control of the partnership's property and business, community of power, rights upon dissolution and the conduct of the parties towards third persons, among others. Joint venture status is created by contract, express or implied.

*Geneva Pharmaceuticals Tech. Corp. v. Barr Labs., Inc.*, 386 F.3d 485, 512 (2d Cir. 2004) (internal citations omitted). Similarly, the Third Circuit in *USX Corp. v. Chubb Group of Insurance Companies*, 68 F.3d 811 (3d Cir. 1995) held that in addition to an agreement, the "[o]ther requisite elements of a joint venture [under New Jersey law] are:

> (1) The contribution by each party of money, property, effort, knowledge or some other asset to a common undertaking;
>
> (2) The existence of a joint property interest in the subject matter of the venture;
>
> (3) The right of mutual control or management of the venture; *and*
>
> (4) An agreement to share the profits or losses of the venture.

*Id.* at 826 (emphasis added). Mr. Campoli is not able to show that any of these requisites are met in this case.

---

[3] In his opposition brief, Mr. Campoli states, "Plaintiff accepts as correct Defendant's contention that New Jersey law applies to the joint venture issue." Brief in Opposition to Defendant HealthExtras, Inc.'s Motion for Summary Judgment [doc. # 121], at 21 n.4.

First, courts have repeatedly held that the "*sine qua non* of a joint venture is a contract, express or implied; that is, an actual *agreement* between the parties." *Id.*; *see Wittner v. Metzger*, 72 N.J. Super. 438, 445, 178 A.2d 671, 675-76 (1962) ("Whether the parties have created the relationship of a joint venture depends upon their intention in accordance with the ordinary rules governing the interpretation and construction of contracts. . . . It is the revealed intention that is to be effectuated, the sense that would be given the interpretation by a reasonably intelligent person."). Here, however, the parties' contract expressly states that they agreed not to become joint venturers but rather to remain independent contractors only. *See* HEI's Exhibits, Exhibit 2, Art. 13.1. As the District of New Jersey held in a similar case,"[t]his Court will not create a joint venture between the parties which they did not intend to create for themselves." *Gunter v. Ridgewood Energy Corp.*, 32 F. Supp. 2d 166, 180 (D.N.J. 1998).

Second, as Mr. Campoli's counsel again acknowledged at argument, there is no evidence of mutual control or management of a venture. There is thus no evidence that HEI had any control over Federal's management of or decisions regarding the Disability Program, or, for that matter, that Federal had any control over HEI's Benefit Program. *See* HEI's Exhibits, Deposition of James Hamilton, at 12-14, 49, 52-53; Deposition of Joanna Ficklin, at 24-27, 72, 80. To the contrary, the evidence shows that each company had responsibility for managing its own functions and duties under the Marketing Agreement. Thus, HEI had no input into or responsibility over the handling of Mr. Campoli's disability claim or the underwriting of Mr. Campoli's disability insurance policy, as the Marketing Agreement itself confirms. HEI's Exhibits, Ex. 2, Art. 3.1 ("Neither [HEI] nor Sklover shall have binding authority with respect to the Authorized Insurances, nor shall they have authority to handle any claims arising under the Policies that FEDERAL issues for the Program.").

All of that was under the sole control of Federal.

Third, there is no evidence that the parties intended to, or did, share profits or losses. Thus, as Mr. Campoli's counsel conceded at argument, there is no evidence that if Federal lost money in underwriting the Disability Policy, HEI would share in those losses or that if Federal made money on the policies, HEI would share in those profits. Similarly, there is no evidence that Federal would share in the profits or losses HEI earned on the Benefit Program. Instead, all of the evidence shows that, like the independent contractors they were, Federal and HEI retained their own losses and their own profits. *Id.*, Deposition of Joanna Ficklin, at 72.

The only evidence that Mr. Campoli points to in this regard is that under the terms of the parties' agreement, an "initial deposit" of $100,000 was to be paid to Federal and "[f]uture amounts due [Federal] may be applied against this deposit." *Id.*, Ex. 1. Also, Mr. Campoli contends that the parties shared premium fees for the insurance Federal provided. However, Mr. Campoli is simply wrong that the parties shared insurance premiums. The undisputed testimony was that HEI collected all program fees paid by Benefit Program members; HEI then remitted a portion of those program revenues to Sklover, the insurance broker, who would retain a portion for broker of record services, and then use the balance to pay the insurance premium to Federal for providing HEI disability insurance for its members. *Id.*, Deposition of Joanna Ficklin, at 86-87; Deposition of James Hamilton, at 52; Deposition of Andrew Sklover at 52. Federal established the premium for the insurance it provided. *Id.*, Deposition of Joanna Ficklin, at 71. The $100,000 deposit was an advance on expected program revenues. Thus, the evidence shows that HEI collected all program revenues and then paid a portion of those gross program revenues to the other service providers, Sklover and Federal, as payment for their provision of services. But the sharing of gross revenues in this fashion

9

is a far cry from the sharing of profits or losses, and it is the latter that is the indicia of a joint venture.

Fourth and finally, there was a common undertaking in that HEI organized a number of service providers so that HEI could offer that bundle of services to the account holders of financial institutions. However, Federal was interested in the marketing of its insurance; there is no evidence that Federal was interested in all of the services HEI was offering. Therefore, to say that this arrangement was a common undertaking is to say that a building is a common undertaking of the general contractor, plumber, electrician, roofer, painter and carpenter. Each, of course, has an overall interest in the smooth and efficient completion of the structure, but typically, they do not share profits or losses and each is responsible for its own employees and work. That is precisely what the evidence shows in this case, and that is not indicative of a joint venture. Accordingly, HEI is entitled to summary judgment on Mr. Campoli's claims that as a joint venturer with Federal, HEI is vicariously liable for the alleged breaches of contract committed by Federal.

## III.

In an apparent effort to head off a grant of summary judgment, counsel for Mr. Campoli sought at oral argument to advance several new theories of liability, including a claim that HEI committed a direct breach of a contract it had entered into with Mr. Campoli and also that HEI had contractually guaranteed Federal's obligations under its insurance contract with Mr. Campoli. As the colloquy at argument revealed, these new theories suffer from a number of evidentiary and conceptual difficulties. However, the most significant – and ultimately fatal – problem with these new theories of liability is that they have never been pleaded. Accordingly, the Court will not entertain them at this late date.

In his original complaint in this case, Mr. Campoli asserted only a misrepresentation claim against HEI. After granting the motion to compel arbitration and staying claims against Federal, the Court entered a Scheduling Order [doc. # 87], in which the Court required the parties to join any additional parties and file any and all amendments of pleadings no later than January 5, 2005. In accordance with the Scheduling Order, Mr. Campoli moved to amend the complaint on January 5, 2005 to assert a joint venture/vicarious liability claim against HEI. It is apparent from the proposed amended complaint that the claim asserted against HEI was for breaches of contract *by Federal;* nothing in the amended complaint asserts direct breaches by HEI. *See* First Amended Complaint [doc. # 93]. HEI did not object to the filing of the Amended Complaint and the Court granted the motion to amend. Thereafter, the parties conducted discovery on the claims pleaded and once discovery closed, HEI filed a motion for summary judgment.

At no point prior to oral argument on HEI's motion did Mr. Campoli ever seek leave to amend his complaint to add additional claims, and perhaps for good reason. For, as Mr. Campoli's counsel acknowledged at oral argument, he was fully aware of all facts supporting his new theories of liability even at the time he filed his First Amended Complaint, the only reason he did not assert the claims now at issue was that "his brain did not think of it," and to this day he has not sought to amend the complaint because he doubted that he could make the showing of good cause necessary to support an amendment at this late date, after all discovery has closed. Mr. Campoli's counsel is certainly correct that in these circumstances, he could not, as he must, show good cause under Rule 16. *See, e.g.*, *Grochowski v. Phoenix Const.*, 318 F.3d 80, 86 (2d Cir. 2003) ("Where a scheduling order has been entered, the lenient standard under Rule 15(a), which provides leave to amend 'shall be freely given,' must be balanced against the requirement under Rule 16(b) that the Court's

11

scheduling order 'shall not be modified except upon a showing of good cause.' ")(internal citations omitted).

However, Mr. Campoli's counsel contends that a generous reading of his Complaint is appropriate and that, under such a reading, he did plead a direct breach of contract claim against HEI. The First Amended Complaint does no such thing. To the extent that representations by HEI are cited, they are cited in support of a misrepresentation claim only. And when that pleading turns to a breach of contract claim, the only breaches cited are breaches by Federal, for which Mr. Campoli seeks to hold HEI vicariously liable. There is no allegation that HEI and Mr. Campoli entered into any contract, what the terms of the contract were, what terms HEI (as opposed to Federal) breached, and how Mr. Campoli was damaged by HEI's (as opposed to Federal's) breaches. Yet, these allegations are essential to pleading a breach of contract claim. Mr. Campoli's counsel asserts that he appended to his Complaint the documents that made up his client's contract with HEI, but those documents are referenced in the complaint as constituting false representations by HEI, not contractual undertakings.

Finally, the Court believes that HEI would be unfairly prejudiced by injecting these new theories of liability into this case at this late date. For one, HEI has not conducted discovery on those claims since they were not in the Complaint. Secondly, HEI has incurred presumably substantial costs moving for summary judgment on a complaint that Mr. Campoli's counsel would apparently like to make a moving target. Third and finally, at argument, Mr. Campoli's counsel said that the contract between HEI and his client included all of the terms of the Federal insurance policy. But if that were true, then HEI would be entitled to arbitrate those contractual claims, just as the Court found that Federal was entitled to do. HEI did not seek to arbitrate Mr. Campoli's claims because

there was no contract claim against HEI in his complaint and the Federal-Campoli arbitration is now completed in view of their settlement. Thus, by delaying the assertion of his alleged contract claims against HEI, Mr. Campoli has deprived HEI of the option of participating in the Federal-Campoli arbitration.[4]

Thus, the record shows that Mr. Campoli's newly asserted theories of liability are not found anywhere in his First Amended Complaint, which he has never sought to amend, he lacks good cause for not moving sooner to amend the Complaint, he has unnecessarily delayed in seeking to raise these new theories of liability until after the close of discovery and the filing of summary judgment briefs, and HEI would be unfairly prejudiced if the Court were now to consider those new theories of liability. In those circumstances, the Court will not entertain the new theories of liability that Mr. Campoli's counsel has asserted in an effort to avoid the grant of summary judgment. *See, e.g.*, *Grochowski*, 318 F.3d at 86 (Observing that a "finding of good cause depends on the diligence of the moving party," and upholding the district court's refusal to find such good cause where, "when the motion [to amend] was filed, discovery had been completed and a summary judgment motion was pending."); *Trilegiant Corp., v. BP Products North America, Inc.*, No. 3:02CV2237 (MRK), 2004 WL 813023 (D. Conn. Apr. 6, 2004) at *1 ("[I]f the Court finds that the movant has engaged in undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, or if amendment would cause undue prejudice to the opposing party the Court has discretion to deny leave to amend.") (internal quotation marks omitted).

---

[4] When the Court granted Federal's motion to compel arbitration, it invited the other parties voluntarily to join that arbitration. HEI declined, but at that time the only claim against it was for a tort, misrepresentation. HEI was never given the option of arbitrating a contract claim.

### IV.

The Court GRANTS Defendant HealthExtras, Inc.'s Motion for Summary Judgment [doc. # 113].  **The Court directs the Clerk to enter summary judgment for HealthExtras on all of Plaintiff's claims and to close this file**.

IT IS SO ORDERED,

/s/    Mark R. Kravitz
United States District Judge

Dated at New Haven, Connecticut: **January 9, 2006**.